72 F.3d 132
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
William ORTIZ & Jose A. Coriano, Defendants-Appellants.
 Nos. 95-1232, 95-1299.
 United States Court of Appeals, Seventh Circuit.
 Argued Oct. 5, 1995.
Decided Dec. 14, 1995.
 
 Before EASTERBROOK, MANION and KANNE, Circuit Judges.
 
 ORDER
 
 1
 William Ortiz and Jose Coriano pleaded guilty to one count of conspiracy to possess with the intent to distribute cocaine in violation of 21 U.S.C. Secs. 841(a)(1) and 846. At sentencing, both defendants received a two-level increase under the Sentencing Guidelines for recklessly endangering the life of another person during flight from the police. U.S.S.G. Sec. 3C1.2 (1993). The only issue on appeal is whether the district court's factual findings support these increases. We affirm.
 
 
 2
 According to the presentence investigation reports ("PSI"), co-defendant Jose Ruiz arranged for Ortiz and Coriano to meet with drug dealers for the purchase of two kilograms of cocaine. The "drug dealers" were, in fact, an informant and undercover agents of the Drug Enforcement Administration.
 
 
 3
 The "buy" took place in the parking lot of the North Riverside Shopping Mall in a Chicago suburb. Coriano, Ortiz, and Ruiz arrived at the parking lot in Ortiz's automobile. Coriano was in control of the drug purchase. When the "dealers" arrived at the shopping mall, Ruiz left the automobile and met briefly with them. Coriano then got out of the car, talked with the "dealers," looked at the "cocaine," and retrieved the "money"[1] from Ortiz's automobile. Coriano gave the bag of "money" to Ruiz who in turn handed it over to the "dealers." At this point Ruiz was immediately arrested and the officers activated their sirens and moved in to arrest Coriano and Ortiz. Upon seeing the police Coriano ran to Ortiz's automobile. Once in the automobile, with Ortiz at the wheel, they fled the scene with agents converging and pursuing in cars with lights and sirens activated. Coriano and Ortiz travelled at high speed through the parking lot of the shopping mall, turned out into the weekday evening rush hour traffic on Harlem Avenue, drove four blocks crossing lanes of oncoming traffic, turned right onto 26th Street, jumped a curb, and travelled approximately 100 feet into Veterans Park. Both Ortiz and Coriano abandoned the car and fled on foot, but they were found within the hour in different locations.
 
 
 4
 Under U.S.S.G. Sec. 3C1.2, the defendant's offense level may be increased two levels if the defendant "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." A defendant's conduct is reckless if he "was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation." U.S.S.G. Sec. 2A1.4, comment. (n. 1). We review the district court's factual findings for clear error. United States v. Chandler, 12 F.3d 1427, 1433 (7th Cir.1994).
 
 
 5
 With respect to Ortiz, the district court found that the increase was appropriate because Ortiz drove at high speed through heavily travelled areas with pedestrians present. The court's finding is not clearly erroneous given that during the evening rush hour Ortiz's car sped through a shopping mall parking lot, crossed four lanes of oncoming traffic, jumped a curb, and went 100 feet into a park. Cf. Chandler, 12 F.3d at 1433 (enhancement appropriate where defendant travelled at speeds up to 50 miles per hour through residential neighborhoods while swerving to avoid the police). Ortiz argues, however, that the enhancement was inappropriate because the PSI did not specifically state that pedestrians or motorists were present at the time of the chase or that a specific law enforcement officer was at risk of death or serious injury because of his flight. We disagree.
 
 
 6
 Without doubt, the evasive maneuvers, including the crossing of four lanes of oncoming traffic, placed the pursuing officers in danger of colliding with each other, with Ortiz, or with another vehicle. United States v. Woody, 55 F.3d 1257, 1274 (7th Cir.), cert. denied, 116 S.Ct. 234 (1995). Also, the district court could reasonably infer from the time of day and the areas through which the chase proceeded that there was a substantial risk of injury to pedestrians in the vicinity. A substantial risk of death or serious bodily injury obviously existed, and it was irrelevant that the risk did not culminate in an actual injury or that cars were not forced to swerve to avoid Ortiz's vehicle. The district court's finding was not clearly erroneous.
 
 
 7
 The district court also applied the two-level enhancement when sentencing Coriano, reasoning as follows:
 
 
 8
 I find that this--this escape, this effort, not just who was the driver but who was the participants in this effort to escape, to flee, is one that nobody cannot accept responsibility for. It's the same thing in a sense analogously to a felony crime where you're assisting somebody who commits a crime, so it's all part and parcel of the whole thing. So I won't offer a reduction in that respect.
 
 
 9
 Sentencing Tr. at 30-31. Coriano objects, arguing that even if the enhancement was proper with respect to Ortiz, he should not have received a two-level increase because he was merely a passenger in the vehicle. He contends that he told Ortiz to stop the vehicle and that he did not exercise any threats, intimidation, direction or control over Ortiz during the chase.[2] The government counters that Coriano actively participated in the escape.
 
 
 10
 In effect, Coriano claims that he was a captive in the automobile driven by Ortiz and that he exhorted Ortiz to stop the dangerous escape from the police. As we recounted earlier the attempted escape occurred during a weekday rush hour and commenced in the parking lot of a shopping mall. Two additional facts are inconsistent with Coriano's assertion that his conduct in fleeing could not be considered participation in reckless endangerment.
 
 
 11
 First, the chase of Coriano started when he was on foot. When he saw the police and they had activated their sirens, he ran to Ortiz's car to facilitate his escape. No one forced Coriano to get into the Ortiz vehicle and it defies common sense to assert that Coriano did not know that the next step would be a high speed exit from the parking lot into heavy traffic with the police in hot pursuit. Second, the claim of Coriano that he did not willingly participate in the escape which caused reckless endangerment is belied by the fact that once the Ortiz vehicle came to a stop he, along with Ortiz, abandoned the car and continued their attempted escape on foot. Again, it is not consistent with common sense to believe Coriano intended to elude capture only if it could be done safely without risk to others.
 
 
 12
 The facts demonstrating Coriano's conduct prior to and following the high speed automobile chase, together with his position as leader of the group, could properly lead the district judge to determine that Coriano's active participation in the attempt to evade capture was knowing and voluntary. See United States v. Luna, 21 F.3d 874 (9th Cir.1994) (passenger held accountable for increase under Sec. 3C1.2 for reckless endangerment when he and driver abandoned car after chase). Cf. United States v. Lipsey, 62 F.3d 1134, 1136 (9th Cir.1995) (passenger not accountable for Sec. 3C1.2 increase for mere presence in car during flight).
 
 
 13
 Under these circumstances, it was not clearly erroneous for the district court to conclude that Coriano was aware of the risk created by his escape and that to disregard this risk constituted reckless endangerment in flight under Sec. 3C1.2 justifying a two-level increase. The sentences of Ortiz and Coriano are AFFIRMED.
 
 
 
 [1]
 The bag of money actually contained bundles of cut paper with real currency only on the outside of the packets
 
 
 [2]
 Although Coriano did not specifically address all of his objections at the sentencing hearing, his arguments are not waived because he filed his objections to the PSI with the district court before the hearing